Richard Alstrom, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board, of Review, Respondent.

334

Submitted on briefs June 6, 1984, before Judges ROGERS, CRAIG and BARBIERI, sitting as a panel of three.

*H. David Spirt,* for petitioner.

*Charles Hasson,* Chief Counsel, for respondent.

*Peter Kahana,* with him, *David Berger, Elizabeth Melton* and *R. L. Sorenson, Briggs and Morgan, P.A.,* for respondent/intervenor, I.C. Systems.

OPINION BY JUDGE BARBIERI, September 28, 1984:
This is an appeal from an order of the Unemployment Compensation Board of Review (Board) deny-

ing unemployment compensation benefits to Richard Alstrom (Claimant) on the ground that he had not been an "employe" within the intendment of Section 4(i) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §753(i), and hence was not qualified to receive benefits pursuant to the provisions of Section 401 of the Law, 43 P.S. §801, which provides in pertinent part that "[c]ompensation shall be payable to any *employe* who is or becomes unemployed. . . ." (Emphasis added.) We will remand.

Section 4(i) of the Law states that the term " 'Employe' means every individual . . . who is performing or . . . has performed services for an employer in *an employment subject to this act."* (Emphasis added.) Section 4(l)(2) of the Law, 43 P.S. §753(l)(2)(B), in turn, provides in pertinent part that

[s]ervices performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services under his contract of service *and in fact;* and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business. (Emphasis added.)

In determining whether a commission salesperson is free from control or direction or the right to be controlled or directed we have held that the key determinative factors are "(1) a definite assignment of territory; (2) a required number of interviews to be made within a prescribed time period; (3) mandatory attendance at sales meetings; and (4) regular filing of progress reports." *Unemployment Compensation*

*Board of Review v. Kessler,* 27 Pa. Commonwealth Ct.
1, 5, 365 A.2d 459, 461 (1976). In determining whether
an individual is customarily engaged in an indepen-
dently established trade or occupation we have held
that the key question is whether the individual is
" 'capable of performing the particular activities in
question for any who wish to avail themselves of such
services; and . . . the nature of the activity [is] not
such that the individual [is] compelled to look to only
a single employer for the continuation of such services
on an ordinary employer-employe relationship.' " *Id.*
at 6, 365 A.2d at 462 (quoting *Bureau of Employment
Security v. AAA Moving and Storage Company,* 76
Dauph. 335, 341 (1961)).

Here, the record shows that Claimant engaged in
the sale of debt collection services provided by I.C.
Systems, Inc. (I.C.), a Minnesota corporation pur-
suant to a contract executed by Alstrom and Associ-
ates, a corporation wholly-owned by Claimant, and
B.N. Pollitt and Associates (Pollitt), a Michigan
based firm which had contracted with I.C. to provide
sales services in a geographical region which included
Pennsylvania. Under the terms of the standard
printed contract Claimant was expressly permitted to
engage in any other business or profession while rep-
resenting I.C. and was authorized to conduct his af-
fairs free from any controls. In a separate agreement
with Alstrom, however, Claimant (1) agreed to make
a daily performance record which would be filled out
daily and mailed weekly to Pollitt, (2) agreed not to
seek any special collection efforts for his customers,
and (3) agreed to meet a $12,000 quarterly sales quota.
A witness from Pollitt testified that performance re-
ports were in fact required and that Claimant had
been given field training by a Pollitt employee who
had filled out a field training report on a standard I.C.
form used by Pollitt. Additional documentary evi-

dence was submitted indicating that a list of potential customers had been supplied to Claimant by I.C.

With respect to sales meetings, a witness from I.C. testified that there were sales meetings held in Minnesota for individuals such as Claimant, who were referred to within the I.C. organization as "District Managers," and that I.C. would reimburse the cost of transportation and lodging to District Managers if they attended such meetings. While this witness testified that attendance at these meetings was voluntary, Claimant testified that he felt that attendance was necessary.

Additional uncontradicted evidence established that Claimant was assigned a definite sales territory in the Philadelphia area, that he paid for all of his own expenses including transportation expenses except when he attended sales meetings in Minnesota, and that his contract with Pollitt had been terminated because he had failed to generate sufficient sales.

Claimant's uncontradicted testimony concerning Alstrom and Associates was to the effect that while he had been employed selling I.C. services in Georgia pursuant to a contract with a regional sales corporation other than Pollitt he had formed Alstrom and Associates pursuant to the advice of his accountant, that the attorney in Georgia who handled the incorporation and himself were the only officers of the corporation he was aware of, that he had disregarded all corporate formalities after moving to Pennsylvania and had never registered the corporation in Pennsylvania, that he owned all of the stock in Alstrom and Associates, and that Alstrom and Associates never had any business relationship with any corporations other than I.C. or its regional sales corporations. Claimant conceded, however, that the remuneration he received, which was solely in the form of commissions and bo-

nuses, was paid by I.C. to Alstrom and Associates, and not to himself.[1]

Claimant's counsel asserts that the network of contracts whereby all selling is by persons or entities designated as "independent contractors" constitutes an "organizational structure devised by the employer [I.C., that] is nothing more than an attempt to circumvent the Unemployment Compensation Law, and other tax laws designed to benefit employees."

Be that as it may, we see here a structure that, disregarding the corporate form at every level, actually amounts to this: I.C. employs Pollitt and others, each designated Field Sales Managers, to engage and manage salesmen, sometimes called District Managers, who carry out sales for I.C. in certain geographical sales districts or territories. Through this sales apparatus, I.C.'s sales activities are as effectively carried out as they would be if all of the actors executed their present roles as regular employees of I.C., rather than as labeled "contractors" and "sub-contractors." Whether or not our suggested analysis should be indulged, however, is not for us at this level, but is a fact finding function of the Unemployment Compensation Authorities.

In any event, the burden is on the employer to establish self-employment. "This Court has repeatedly held that before a claimant will be declared to have been self-employed, the employer bears the burden of proving *both* elements of Section 4(1)(2)(B)." (Emphasis in original.) *Crenshaw v. Unemployment Compensation Board of Review*, 50 Pa. Commonwealth Ct. 136, 139, 412 A.2d 682, 684 (1980). Unfortunately the Board in the present case made no findings with respect to the question of control, and made only one

---

[1] The record shows that Claimant would report his sales to I.C. and that I.C. would in turn send commission checks to Pollitt and Claimant.

finding, not supported by the evidence of record, concerning the question of whether Claimant was customarily engaged in an independently established trade or business.[2] Since we cannot exercise our appellate review because of the lack of findings by the Board, we shall remand for findings on the criteria noted in our decisions in *Kessler* and *AAA Moving and Storage Company.*

### AMENDED ORDER

Now, September 28, 1984, the order of the Unemployment Compensation Board of Review at Decision No. B-217870, dated May 5, 1983, is vacated, and the record in this case is hereby remanded for further proceedings consistent with the opinion above. Jurisdiction relinquished.

---

[2] The Board found as a fact that "Alstrom and Associates has also performed services for Amway Corporation during the time that it represented I.C. Systems." While there is some evidence of record indicating that Claimant was employed part-time as an Amway distributor at the time he commenced working for Pollitt, namely his statement to that effect on an "Independent Contractor's Application" he completed prior to joining Pollitt, there is no evidence of record indicating that he conducted this business through Alstrom and Associates. In fact, this application shows that Claimant's association with Amway predated the creation of Alstrom and Associates.